UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 16-341 (MJD/FLN) |
| Plaintiff, | |
| v. | |
| Angela Schulz (1), | **REPORT AND** |
| Yahye Herrow (3), | **RECOMMENDATION** |
| Sahal Warsame (4), | |
| Abdisalan Hussein (7), | |
| Defendants. | |

_____

David Michael Maria and John Kokkinen, Assistant United States Attorneys, for Plaintiff.
Paul Engh for Defendant Angela Schulz.
Richard Malacko for Defendant Yahye Herrow.
Terrence Duggins for Defendant Sahal Warsame.
R.J. Zayed and Lauren Roso for Defendant Abdisalan Hussein.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on May 2, 2017, on Defendant Angela Schulz's motions to suppress search and seizure evidence and any statements made during the search (ECF Nos. 129, 130), as well as Defendants Schulz, Yahye Herrow, Sahal Warsame, and Abdisalan Hussein's respective motions to dismiss the Indictment (ECF Nos. 98, 100, 121, 138). This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. At the hearing, the Government entered two exhibits into evidence and offered testimony from Minnesota Department of Commerce Fraud Bureau Supervisory Special Agent Jonathan Ferris. *See* Exhibit and Witness List, ECF No. 150. For the reasons set forth below, Defendants' motions should be **DENIED**.

**A.    The Indictment**

On December 20, 2016, a United States Grand Jury returned an indictment, charging

Defendant Angela Schulz through her receptionist, Defendant Sammany Rathy Spanger, with making illegal kick-back payments to Defendants Yahye Herrow, Sahal Warsame, Temitayo ("Tayo") Daniel, Meron Samuel, and Abdisalan Hussein, in a scheme to defraud automobile insurance companies by submitting claims and receiving reimbursements through her chiropractic clinics for chiropractic services that either were not medically necessary or were not rendered. Indictment, ECF No. 1. Defendants are charged with one count of conspiracy to commit health care fraud and one count of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1349. *Id.* at 19–22; *see also* 18 U.S.C. §§ 1341, 1347. The Indictment alleges that Schulz, who is a chiropractor and the chief executive officer of Meyer Chiropractic Center, P.A., and Angela Morrow Rehabilitation, P.A., and Sammany who worked as the Meyer Chiropractic receptionist, paid Herrow, Warsame, Daniel, Samuel, and Hussein, to recruit automobile accident victims to show up for medical appointments and continue receiving unnecessary chiropractic services from Schulz's clinics. *Id.* ¶¶ 2–11. Herrow, Warsame, Daniel, Samuel, and Hussein are also alleged to have paid some of these recruited patients directly to continue going to Schulz's clinics for chiropractic treatments. *Id.* ¶ 13. Under this scheme, the Defendants are accused of causing automobile insurance companies to have paid millions of dollars as a result of false and fraudulent reimbursement claims. *Id.* ¶¶ 23–25. Defendants Sammany Rathy Spangler and Meron Samuel entered into plea agreements with the Government on March 30, 2017, and May 16, 2017, respectively. Plea Agreements, ECF Nos. 83, 157. Trial is scheduled to begin for the remaining Defendants on November 6, 2017, before the Honorable Judge Michael J. Davis. Order, ECF No. 162.

**B.      Motion to Suppress Search and Seizure Evidence (ECF No. 129)[1]**

---

[1] Schulz also moves for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154

On December 14, 2015, the Honorable Magistrate Judge Becky Thorson signed a search warrant authorizing the search of Meyer Injury Center and Morrow Accident Rehabilitation Center. Gov't Ex. 1, ECF No. 150. The following day, Judge Thorson signed another search warrant authorizing the search of a cellular telephone recovered during the execution of the original search warrant. ECF No. 150, Gov't Ex. 2. Schulz now moves to suppress any evidence obtained during searches pursuant to these warrants, contending that because the affidavit in support of the first warrant relies on Minnesota Statute section 609.12[2] ("the Runner Statute") and because the affiant failed to include reference to the August 19, 2014, *Illinois Farmers Insurance Co. v. Mobile Diagnostic Imaging* Order, *see* No. 13-cv-2820 PJS/TNL, 2014 WL 4104789, at *1 (D. Minn. Aug. 19, 2014), Magistrate Thorson did not know to disregard the allegations related to the Runner Statute in the affidavit. *See* Mot. to Suppress, ECF No. 129; Mem. in Supp. of Mots. to Suppress, ECF No. 155. If she had, Schulz contends, Judge Thorson would have determined that the affidavit does not support a finding of probable cause. *See id.* Therefore, the search pursuant to the first warrant was illegal as was the recovery of the cellular telephone later searched pursuant to the second warrant. *See id.* The Government argues that *Illinois Farmers* does not foreclose a federal

---

(1978). Because Schulz does not identify "a false statement knowingly and intentionally, or with reckless disregard for the truth was included in the affidavit," *United States v. Humphreys*, 982 F.2d 254, 259 n.2 (8th Cir. 1992), she has not met her burden to be entitled to such a hearing.

[2] "Whoever employs, uses, or acts as a runner, capper, or steerer is guilty of a felony and may be sentenced to imprisonment for not more than three years or to a payment of a fine of not more than $6,000, or both. Charges for any services rendered by a health care provider, who violated this section in regard to the person for whom such services were rendered, are noncompensable and unenforceable as a matter of law."

Minn. Stat. § 609.612, subdiv. 2.

prosecution under the facts alleged in the Indictment, nor does it prohibit a probable cause finding that the evidence of a crime may be found based on the affidavits at issue in this case, but even if the affidavits failed to establish probable cause, the search warrants qualify for the good-faith exception to the exclusionary rule as articulated in *United States v. Leon*, 468, U.S. 897, 922 (1984). Gov't Opp'n Mem. 2, ECF No. 163 (internal quotations omitted).

After reviewing the Order, the Court first observes that *Illinois Farmers* does not foreclose a federal prosecution under the facts alleged in the Indictment, nor does it prohibit a probable cause finding that evidence of a crime may be found based on the affidavits at issue in this case. *See* 2014 WL 4104789. Here, FBI Special Agent Jennifer Khan's affidavit includes approximately seven pages outlining the ongoing joint investigation of the FBI and the Minnesota Department of Commerce Fraud Bureau into the suspected scheme and fraud. ECF No. 150, Gov't Ex. 1. Based on evidence collected from the experiences of a confidential informant, undercover officers posing as prospective patients, and reimbursment claims submitted to automobile insurance companies for treatment provided to the undercover officers identified in the affidavit, Khan attested that she believed evidence of a fraud could be found in Meyer Injury Center and Morrow Accident Rehabilitation Center. *Id.*

Assuming without deciding that the search warrants lacked probable cause, the Court concludes that the evidence is nonetheless admissible under the good-faith exception to the exclusionary rule as articulated in *United States v. Leon*, 468 U.S. 897, 922 (1984). *See also United States v. Clay*, 646 F.3d 1124 (8th Cir. 2011) ("[T]he exclusionary rule should not be applied so as to bar the admission of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate, even if that search warrant is later held to be

invalid." (citing *Leon*, 468 U.S. at 900)).

The Eighth Circuit has outlined four situations where an officer's reliance on a warrant would be unreasonable: (1) the officer included information in the affidavit that he knew was false or would have known was false except for his reckless disregard of the truth; (2) the affidavit is so lacking in probable cause that it is objectively unreasonable for the officer to rely on it; (3) the judge failed to act in a neutral and detached manner; or (4) the warrant is so facially deficient that the officer cannot reasonably presume the warrant to be valid. *See United States v. Phillips*, 88 F.3d 582, 586 (8th Cir. 1996) (citing *Leon*, 468 U.S. at 922). None of these situations are applicable here. This is not a situation where the supporting affidavits were so devoid of factual support that it would be objectively unreasonable for a law enforcement officer to rely on it. *Cf. United States v. Herron*, 215 F.3d 812 (8th Cir. 2000) (concluding that the good-faith exception did not apply where the affidavit at issue contained no facts that the defendant was involved in marijuana activities or that such activities were occurring on the premises searched). The record does not support a finding that the officers' reliance on the warrants were unreasonable. *See Leon*, 468 U.S. at 922. Additionally, there is no evidence that Khan included false information in the warrant application, that Judge Thorson failed to act in a neutral manner, or that the warrants were so facially deficient it would be unreasonable for an officer to rely on them. Indeed, Schulz does not argue that there are factual deficiencies in the affidavits, but only contends that Khan failed to include what she believes to be applicable law. Therefore, the motions to suppress evidence obtained pursuant to the search warrant, must be denied. *See id*.

The recovery and subsequent search of the cellular phone obtained during that search is likewise saved under the good-faith exception. *Id.* Indeed, the original warrant authorized the search and seizure of the cellular phone. *See* ECF No. 150, Gov't Ex. 1, Attach. B ¶ 24. Although Schulz

does not contest that the warrant to search the cellular phone lacks probable cause, the Court nonetheless observes that the warrant is supported by a nearly identical affidavit authored by Khan. ECF No. 150, Gov't Ex. 2. Even assuming without deciding that the affidavit does not support a finding of probable cause, the warrant would be similarly saved by the good-faith exception to the exclusionary rule for the same reasoning described above. *See supra*.

### C.   Motion to Suppress Statement (ECF Nos. 130)

Schulz additionally moves to suppress any statement she may have made during the execution of the search warrant. Mot. to Suppress Statement, ECF No. 130. According to Schulz, her "statement was only obtained because the Agent had gained access to her clinics and herself via a defective warrant," as fruit of the poisonous tree. Because the Court concludes that the warrant was not defective, and if it was, is nonetheless saved by good faith exception, Schulz motion to suppress her statement on this ground must be denied.

Schulz also argues that she was in custody at the time that she made any statements during the execution of the search warrant, and was not afforded *Miranda* warnings. ECF No. 155; 384 U.S. 436 (1966). The Government argues that Schulz was not in custody at the time she made any statement, and therefore was not entitled to *Miranda* warnings. Gov't Opp'n Mem. 37–39, ECF No. 143.

Special Agent Ferris testified that after officers arrived at Schulz's office to execute a search warrant, Schulz asked him what the search warrant was related to. After Ferris explained the criminal investigation into suspected use of runners to obtain chiropractic patients and submission of claims to automobile insurance companies for that treatment, Schulz responded, "everybody does that." This statement was not recorded and Schulz declined to participate in any further interviews.

The Fifth Amendment provides that no person "shall be compelled in any criminal case to

6

be a witness against himself." U.S. Const. amend V. In *Miranda v. Arizona*, the Supreme Court concluded that four specific warnings were necessary prior to a custodial interrogation in order to "assure that the individual's right to choose between silence and speech remain unfettered throughout the interrogation process." 384 U.S. at 469. "The basic rule of *Miranda* is that an individual must be advised of the right to be free from compulsory self-incrimination, and the right to the assistance of an attorney, any time a person is taken into custody for questioning." *United States v. Griffin*, 922 F.2d 1343, 1347 (8th Cir. 1990) (internal citations omitted). Law enforcement officers must inform suspects of their *Miranda* rights before subjecting them to custodial interrogations. *See United States v. Sanchez*, 676 F.3d 627, 630 (8th Cir. 2012). "Failure to do so results in a violation of the suspect's Fifth Amendment rights and renders any statement gained from the violation inadmissible in the government's case-in-chief." *Id.*; *see also Stansbury v. California*, 511 U.S. 318, 322 (1994) (holding that statements elicited from a suspect in violation of *Miranda* are inadmissible).

A custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way." *United States v. Flores-Sandoval*, 474 F.3d 1142, 1147 (8th Cir. 2007). Interrogation occurs both when an officer expressly questions a person in custody or when officers use any words "that they should have known were reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 302 (1980).

Assuming without deciding that Schulz was in custody at the time she made the statement, the Court concludes that her statement was not made in response to any questioning by Ferris nor any statement made by Ferris that he should have known was reasonably likely to elicit an incriminating response. *See Flores-Sandoval*, 474 F.3d at 1147; *Innis*, 446 U.S. at 302. Indeed,

7

Schulz asked Ferris a question to which he responded. This exchange does not constitute an interrogation. Schulz's motion to suppress her statement must be denied.

**D.      Motions to Dismiss the Indictment (ECF Nos. 98, 100, 121, 138)**

Warsame moves this Court for an Order dismissing the Indictment, or in the alternative for a Bill of Particulars.[3] Mot. to Dismiss, ECF No. 98. Specifically, he argues that the basis for the Indictment is a violation of the Runner Statute, that the Counts charged suffer from both multiplicity and duplicity, and that because he was not involved in the delivery of the medical services or in billing the insurers, the Indictment against him must be dismissed. Mem. in Supp. of Mot. to Dismiss and for Bill of Particulars, ECF No. 99. Hussein likewise moves to dismiss the Indictment contending that it fails to allege a federal offense, in that it only raises violations of the Runner Statute and does not "allege that Hussein knowingly and willingly engaged in a fraudulent scheme in order to further Defendant Angela Schulz's alleged practice of seeking reimbursement for medically unnecessary treatment." Mem. in Supp. of Mot. to Dismiss, ECF No. 101. Schulz also asserts that the Indictment must be dismissed because it only alleges violations of the Runner Statute and suffers from muliplicity and duplicity. Mot. to Dismiss, ECF No. 121. Finally, Herrow moves to dismiss the Indictment against him asserting that "the Indictment fails to allege that Defendant Herrow intended to further a fraudulent scheme by referring patients to Angela Schulz that he knew would receive medically unnecessary treatment." Mot. to Dismiss, ECF No. 138. The Court addresses each of these arguments in turn. The Court recognizes Defendants arguments as contending that the Indictment should be dismissed for failing to state a claim or because the Counts suffer from multiplicity and duplicity. *See* ECF Nos. 99, 101, 121, 138. The Government argues that

---

[3] The Court addresses Warsame's motion for a Bill of Particulars in its Order.

8

the Indictment does not merely allege that Schulz and her co-defendants violated the Runner Statute, "clearly charges a conspiracy to commit health care fraud and a conspiracy to commit mail fraud," and is not multiplicious nor duplicitous. ECF No. 143 at 13, 15, 22–24.

### 1.     Failure to State a Claim

"The true test of the sufficiency of an indictment is . . . whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet." *United States v. Debrow*, 346 U.S. 374, 376 (1953) (internal citations omitted). The Court concludes that the Indictment adequately alleges the elements of a conspiracy to commit health care fraud and a conspiracy to commit mail fraud, and it provides more than adequate detail about the co-conspirators' scheme to defraud. Defendants are accused of knowingly and willfully either receiving money to bring in patients, paying patients, or paying others to bring in patients, for healthcare treatment billed to automobile insurance providers. *See* ECF No. 1. The Court again observes that *Illinois Farmers* does not foreclose a federal prosecution under the facts alleged in the Indictment, *See* 2014 WL 4104789, and concludes that any information related to the Runner Statute, is relevant to the intent of the parties and the counts charged, and not so inflammatory as to be prejudicial. *See* Fed. R. Crim. P. 7(c). Any prejudice suffered by the allegations in the Indictment are outweighed by their relevancy to the charges. *See Dranow v. United States*, 307 F.2d 545, 558 (8th Cir. 1962). The Indictment provides enough information for Defendants to mount a defense to the crimes charged. *See* Fed. R. Crim. P. 7(c)(1).

It is irrelevant, which member of the conspiracy charged actually delivered medical services or billed insurers so long as the Indictment adequately alleges that all Defendants were involved in a scheme to defraud the automobile insurers and contemplated that the mail would be used in the alleged scheme. *See id.*; 18 U.S.C. § 1349. "[S]o long as they share a common purpose, conspirators

9

are liable for the acts of their co-conspirators." *Salinas v. United States*, 522 U.S. 52, 64, (1997). To the extent that Warsame, Hussein, and Herrow argue that their lack of alleged involvement in the delivery of medical services or in the billing of insurers requires that the Indictment against them be dismissed for failure to state a claim, this argument is meritless. They are accused of acting in concert with others to willfully and knowingly execute a scheme to defraud the automobile insurers. If they either did not willfully or knowingly participate in such a scheme, this defense should be raised at trial. However, arguing that they did not play a particular role in such a scheme, does not establish any failing of the Indictment. The Indictment adequately alleges that Warsame, Hussein, and Herrow were paid, and in turn paid patients directly, to attend a certain number of treatment sessions at the clinic, and that number of sessions was predetermined for every patient regardless of the individual's actual medical needs. *See* ECF No. 1. The Government will have the burden to prove at trial that these sessions were medically unnecessary and resulted in noncompensable claims to automobile insurance companies that were billed for anyway. *See* 18 U.S.C. § 1349. If the Government fails to meet its burden at trial, Defendants will be acquitted. However, the Indictment adequately alleges the scheme in which all Defendants participated in as a conspiracy to commit health care and mail fraud.

    **2.**    **Multiplicity and Duplicity**

Warsame contends that Count 1 of the Indictment "charges the actual offense of health care fraud, a violation of Minn. Stat. § 609.612, and a conspiracy that sought to violate both the mail fraud (18 U.S.C. §1341) and health care fraud (18 U.S.C. §1341) statutes." ECF No. 99 at 3. He also contends that Count 2 " charges two separate offenses, conspiracy to commit mail fraud and actual mail fraud in one single count." Schulz also argues that "Counts 1 and 2 charge identical conspiracies in two different counts . . . [and] Counts 1 and 2 also charge multiple violations within

10

a single count, namely a violation of Minnesota law, health care and mail fraud." ECF No. 121.

"Multiplicity is the charging of a single offense in several counts. . . . The obvious ill to be avoided is that a multiplicity of charges heaps repeated punishments on the defendant and makes it appear that he has engaged in a crime spree, rather than a single violation of the law." *United States v. Edwards*, 976 F. Supp. 810, 811 (E.D. Ark. 1997) (internal citations omitted). Schulz contends that Counts 1 and 2 should be charged as a single count. *See* ECF No. 121. The Court concludes, however, that because the Government will be required to provide different factual proof for each conspiracy at trial, the Counts charge two separate crimes. *See United States v. Graham*, 60 F.3d 463, 467 (8th Cir. 1995). The Government will be required to prove at trial that Defendants reached one agreement to commit the crime of health care fraud and another agreement to commit the crime of mail fraud. *See* Eighth Circuit Manual of Model Criminal Jury Instructions, § 5.06A-1, "Conspiracy: Elements." Therefore, the motion to dismiss for multiplicity should be denied.

Duplicity is the joining in a single count, two or more distinct and separate offenses. *United States v. Street*, 66 F.3d 969, 974 (8th Cir. 1995). "The principal vice of a duplicitous indictment is that the jury may convict a defendant without unanimous agreement on the defendant's guilt with respect to a particular offense." *United States v. Karam*, 37 F.3d 1280, 1286 (8th Cir. 1994). A charge constitutes a separate offense if the Government is required to provide different factual proof. *See Graham*, 60 F.3d at 467. The Court concludes that each Count in the Indictment charges a single offense and is not duplicitous. Count 1 charges Defendants with conspiracy to commit health care fraud and Count 2 charges Defendants with conspiracy to commit mail fraud. ECF No. 1; ECF No. 143 at 22. While reference to the Runner Statute and how Defendants conspired to commit health care fraud and mail fraud, are included in the Indictment, the Government will only be required put forward factual proof at trial of conspiracy to commit health care and mail fraud. ECF No. 143 at

11

24. Additional facts that apprise Defendants of the circumstances and the factual scenario that gave rise to the charges, does not amount to additional allegations or charges in the Indictment. The motion to dismiss for duplicity should be denied.

**E.   Recommendation**

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Angela Schulz's motion to suppress search and seizure (ECF No. 129) be **DENIED**.

2. Angela Schulz's motion to suppress statements (ECF Nos. 130) be **DENIED**.

3. Defendants' respective motions to dismiss the Indictment (ECF Nos. 98, 100, 121, 138) be **DENIED**.


DATED: June 26, 2017                                          *s/Franklin L. Noel*
                                                                          FRANKLIN L. NOEL
                                                                          United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **July 10, 2017**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **July 10, 2017**, a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.