UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

            Plaintiff,

         v.

Angela April Schulz (1),
Yahye Mohamed Herrow (3),
Temitayo Ifeloju Olusholda Daniel (5),
Abdisalan Abdulahab Hussein (7),
Mukhtar Yusuf Hassan (8),

            Defendants.

Criminal No. 16-341 (MJD/FLN)

**REPORT AND RECOMMENDATION**

---

John Kokkinen, Assistant United States Attorney, for Plaintiff.
Paul Engh, for Defendant Angela April Schulz.
James Ventura, for Defendant Mukhtar Yusuf Hassan.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on January 8, 2018, on Defendant Angela April Schulz's motion to dismiss (ECF No. 229), and Defendant Mukhtar Yusuf Hassan's motions to suppress (ECF Nos. 242, 255, and 256). This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. At the hearing, both the Government and Mukhtar Yusuf Hassan offered testimony. For the reasons set forth below, the Court recommends that Angela April Schulz's motion to dismiss be **DENIED** (ECF No. 229), and Mukhtar Yusuf Hassan's motions to suppress (ECF Nos. 242, 255, and 256) be **DENIED**.

# I. FINDINGS OF FACT

## A. The Superseding Indictment

On August 15, 2017, a Grand Jury returned a Superseding Indictment against Angela April Schulz, Yahye Mohamed Herrow, Temitayo Ifeloju Olusholda Daniel, Abdisalan Abdulahab Hussein, and Mukhtar Yusuf Hassan (collectively "Defendants"). *See generally*, Superseding Indictment, ECF No. 195. The Defendants are accused of participating in a scheme to defraud automobile insurance companies by submitting claims and receiving reimbursements for chiropractic services that either were not medically necessary or were not rendered. *Id.*

Schulz, a chiropractor and the chief executive officer of Meyer Chiropractic, P.A., is alleged to have paid Herrow, Daniel, Hussein, and Hassan to recruit automobile accident victims to show up for medical appointments and receive unnecessary chiropractic services. *Id.* ¶¶ 2–22. To insulate herself from the illegal payments, Schulz is alleged to have paid the Defendants through her receptionist Sammany Spangler. *Id.* ¶ 16. Schulz is alleged to have prescribed patients with similar, and often identical, treatment regardless of their physical condition. *Id.* ¶ 18. Under this scheme, Defendants are accused of causing automobile insurance companies to have paid millions of dollars as a result of false and fraudulent reimbursement claims. *Id.* ¶ 22.

The Superseding Indictment charges Defendants with one count of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1349, and sixteen counts of mail fraud, in violation of 18 U.S.C. §§ 1341, 2. *Id.* ¶¶ 23–26.

## B. Defendant Hassan's Interview on March 14, 2017

On March 14, 2017, Defendant Mukhtar Hassan met with Special Agent Jonathan Ferris, with the Department of Commerce's Fraud Bureau, at Ferris' office in Saint Paul, Minnesota. Defendant Hassan arrived voluntarily, and entered the office through the main reception area. Defendant

Hassan did not have to go through security. Once in the interview room, Defendant Hassan was informed that he was not under arrest and that he could leave at any time. Both agents whom Defendant Hassan met with were wearing coats or jackets that concealed their firearm. Special Agent Ferris informed Defendant Hassan of their investigation and Defendant Hassan made a phone call to his brother during the interview. According to Special Agent Ferris, Defendant Hassan did not appear to be impaired physically or mentally at any point during their conversation. The interview terminated when Defendant Hassan said that he needed to contact an attorney. The interview was not recorded by the agents.

### III. CONCLUSION OF LAW

**A.     Defendant Schulz's Motion to Dismiss the Superseding Indictment (ECF No. 229).**

Defendant Angela April Schulz's moves to dismiss the Superseding Indictment arguing that the Superseding Indictment runs afoul this Court's decisions in *Illinois Farmers Ins. Co. v. Guthman*, No. 17-270 (DSD/SER), 2017 WL 3971867 (D. Minn. Oct. 25, 2017), and *Illinois Farmers Ins. Co. v. Mobile Diagnostic Imaging, Inc.*, No. 13-2820 (PJS/TNL), 2014 WL 4104789 (D. Minn. Aug. 19, 2014). Because neither decision forecloses a federal prosecution under the facts as alleged in the Superseding Indictment, Defendant's motion must be denied.

In *Guthman*, the Court considered the issue of whether plaintiff's civil complaint stated a plausible claim for relief. *Guthman*, 2017 WL 39871867 at *2. In finding that plaintiff's complaint failed to "plausibly allege that the runners knowingly participated in a scheme to defraud," the Court took note that plaintiff failed to allege that "the runners were aware of the scheme." *Id.* at *6. Here, Defendant Schulz's charges in the Superseding Indictment are not based solely on the payment or receipt of kickbacks. The Superseding Indictment accuses Schulz of not only being aware of the scheme to defraud the insurance companies, but also of submitting claims for unnecessary medical

services, and concealing the fact that these claims were the result of kick-back payments from the insurance companies. As this Court has found "[a] claim can be fraudulent based on the withholding of a material fact from the insurance company, even when that material fact does not implicate medical necessity." *United States v. Forthun*, No. 16-CR-339 (MJD/FLN), ECF No. 343 (D. Minn. Sept. 25, 2017)*; see also Liberty Mut. Fire Ins. Co. v. Acute Care Chiropractic Clinic P.A.*, 88 F. Supp. 3d 985, 1008 (D. Minn. 2005) (finding that the Minnesota No-Fault framework permits insurance companies to deny benefits based on grounds other than medical necessity). Judge Schiltz's decision in *Mobile Diagnostic Imaging, Inc.*, similarly offers no support for Defendant Schulz's argument. In that case, the Court did not address the runner statute, but instead dismissed plaintiff's civil fraud claims based on the plaintiffs failure to plead with Rule 8(a) plausibility or Rule 9(b) particularity. *Mobile Diagnostic Imaging, Inc.*, 2014 WL 4104789 at * 13 . Therefore, because neither decision forecloses Defendant Schulz's charges in the Superseding Indictment, Defendant Schulz's motion to dismiss must be denied

**B.      Defendant Hassan's Motion to Suppress to Statements (ECF No. 255).**

Defendant Mukhtar Yusuf Hassan moves to suppress any statements, admission, and answers from his March 14, 2017 interview with Special Agent Ferris on the ground that any such statements were obtained in violation of his constitutional rights.

A statement is voluntary if it is the "product of an essentially free and unconstrained choice" by the speaker. *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973). In determining whether a statement is voluntary, the court looks at the tactics used by law enforcement, the details of the conversation, and any characteristics of the accused that might cause his will to be easily overborne. *United States v. Rohrbach*, 813 F.2d 142, 144 (8th Cir. 1987). The court must also determine whether a suspect was in custody at the time the statement was made. A suspect is in custody for

*Miranda* purposes if "a reasonable person in his position would consider his freedom of movement restricted to the degree associated with formal arrest." *United States v. Muhlenbruch*, 634 F.3d 987, 995–96 (8th Cir. 2011) (quoting *United States v. Flores-Sandoval*, 474 F.3d 1142, 1146 (8th Cir. 2007)). In making that determination, courts consider "the totality of the circumstances that confronted the defendant at the time of questioning" and ask whether a reasonable person under such circumstances would have felt free to terminate the interview and leave. *United States v. Williams*, 760 F.3d 811, 814 (8th Cir. 2014) (citing *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)).

Here, the totality of the circumstances show that Defendant Hassan was not in custody when being interviewed by law enforcement officers. The Eighth Circuit has stated that "[t]he most obvious and effective means of demonstrating that a suspect has not been taken into custody . . . is for the police to inform the suspect that an arrest is not being made and that the suspect may terminate the interview at will." *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990) (internal quotation marks omitted); *see also United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004) ("That a person is told repeatedly that he is free to terminate an interview is powerful evidence that a reasonable person would have understood that he was free to terminate the interview."). Prior to commencing the interview, Special Agent Ferris utilized this "obvious and effective" method for indicating a non-custodial setting by telling Defendant Hassan that he was not under arrest and that he could leave at any time. Based on the totality of the circumstances, the Court concludes that a reasonable person in Defendant Hassan's position would have felt free to terminate the interview and leave.

There is also no evidence to suggest that Defendant Hassan's statements during the March 14, 2017, interview were not voluntary. The agents did not use any violence or physically threaten the Defendant during the conversation. The agents' weapons were concealed. The meeting

occurred at Special Agent Ferris' office, not a police interrogation room, and the conversation was terminated when Defendant Hassan stated that he wanted to speak to an attorney. The circumstances that allegedly rendered the statements involuntary — the fact that the interview took place at Special Agent Ferris' office, and that the interview was not recorded — do not establish any coercive police activity. Accordingly, Defendant Hassan's motion to suppress any statements made on March 14, 201, must be denied.

C.     **Defendant Hassan's Motion to Suppress Electronic Evidence (ECF No. 256).**

Defendant Hassan also moves to suppress all evidence obtained through wire interception, electronic surveillance, cellular telephone tracking devices, global positioning devices, thermal imaging devices, transponders, public or private cameras, and all other methods.

At the hearing, the Government represented that they have not intercepted any of Defendant Hassan's wire or oral communications. As such, Defendant Hassan's motion to suppress electronic evidence must be denied as moot.

D.     **Defendant Hassan's Motion to Suppress Evidence (ECF No. 242).**

Defendant Hassan initially moved to suppress all evidence obtained a result of a search and seizure of controlled substances on the ground that the search warrant or seizure order was issued without a sufficient showing of probable cause. *See* ECF No. 242. At the hearing, however, Defendant stated that this motion was actually directed at business records seized from Defendant Schulz as a result of two search warrants, one issued for Defendant Schulz's clinic, and one for her phone. In response, the Government argued that Defendant Hassan has not met his burden of establishing that he had a legitimate expectation of privacy, so as to give him standing to challenge the search. *See United States v. McCaster*, 193 F.3d 930, 933 (8th Cir. 1999) ("[T]he person

challenging the search has the burden of showing both a subjective expectation of privacy and that the expectation is objectively reasonable; that is, one that society is willing to accept.")

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has held that the "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). In other words, an individual only has standing to challenge a search or seizure if he or she personally has a legitimate expectation of privacy that is implicated by the challenged governmental action. *Id*. The Court concludes that Defendant Hassan does not have standing to challenge the evidence obtained from Defendant Schulz because Defendant Hassan did not have a reasonable expectation of privacy in Defendant Schulz's documents, clinic, or phone. *See Katz v. United States*, 369 U.S. 347, 351 (1967) (holding that capacity to claim the protection of the Fourth Amendment depends upon whether the area searched was one in which there was a reasonable expectation of privacy). Therefore, Defendant Hassan's motion to suppress evidence must be denied.

## IV. RECOMMENDATION

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Schulz's motion to dismiss (ECF No. 229) be **DENIED**.
2. Defendant Hassan's motions to suppress (ECF No. 242, 255, and 256) be **DENIED**.

DATED: February 8, 2018                         */s/ Franklin L. Noel*
                                                FRANKLIN L. NOEL
                                                United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **February 22, 2018**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.